# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**GILMAN SCHULZ, III,**

      Plaintiff,                  Case No.:

v.

**FIRSTKEY HOMES, LLC,**

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, GILMAN ("GIL") SCHULZ, III, by and through his undersigned counsel and sues the Defendant, FIRSTKEY HOMES, LLC ("FIRSTKEY" or "DEFENDANT") and states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, GILMAN SCHULZ, III, is an adult resident of Hillsborough County, Florida. At all times material, Plaintiff was an employee of Defendant within the meaning of the Family and Medical Leave Act, the Americans with Disabilities Act, and the Florida Civil Rights Act.

4. Defendant, FIRSTKEY, is a Foreign Limited Liability Company authorized and doing business in this Judicial District. At all times material, Defendant employed Plaintiff. At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Family and Medical Leave Act, the Americans with Disabilities Act, and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

5. At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

6. At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

7. Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

8. Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9. On March 30, 2023, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

10. Plaintiff intends to move the Court to amend this Complaint once he meets all conditions precedent under Title VII and the Florida Civil Rights Act.

## FACTUAL ALLEGATIONS

11. Plaintiff is a 61-year-old male with disabilities. Specifically, Plaintiff has been diagnosed with and suffers from degenerative disc disease, spinal stenosis and herniations in the L1 and L2 discs. As a result, Plaintiff requires a spinal fusion surgery. Plaintiff's disability impacted Plaintiff's ability to walk, sit, and stand.

12. On or about January 4, 2021, Plaintiff began his employment with Defendant as Regional Maintenance Manager.

13. During Plaintiff's employment with Defendant, Plaintiff received positive performance evaluations and was never formally disciplined.

14. On February 4, 2022, Plaintiff received a congratulatory email from Pia Cornejo (Chief Human Resources Office) stating that Plaintiff was a "Keyper" and offered Plaintiff a promotion to the position of Senior Director of Construction, which Plaintiff accepted.

15. On January 3, 2023, Plaintiff sent a text message to Diego Sanchez (Senior Vice President of Construction) and informed Sanchez that he was confined to bed due to his back issues, needed assistance walking, and was hospitalized the prior three days. Plaintiff further informed Sanchez that he was immediately reaching out to his surgeon and would update Sanchez as soon as he was able to see his doctor.

16. On January 4, 2023, Plaintiff sent a text message to Sanchez and informed him that the spinal injections he received did not provide the relief he hoped and that he was trying his best to work. However, he was walking with a cane and/or assistance from his wife and was not certain he could make it through a full workday. Plaintiff also informed Sanchez that he had a follow up appointment the next day.

17. On January 17, 2023, Plaintiff emailed Sanchez and updated him on his health condition. Specifically, Plaintiff outlined the time off that he needed over the coming month for doctor's appointments, treatments, and physical therapy. Plaintiff also asked Sanchez if he should share the same information with Human Resources. Sanchez did not respond to Plaintiff's question.

18. On January 20, 2023, Plaintiff emailed Taylor French Brown (Human Resource Generalist, East Region) regarding his physical therapy appointments. Specifically, Plaintiff informed French Brown that, for insurance purposes, he was

required to attend physical therapy before his surgery was approved. Plaintiff noted that his physical therapy appointments would take him out of the office for approximately 1.5 hours, three days per week, between 1:00 p.m. and 3:00 p.m. Plaintiff also attached his physical therapy schedule through February 10, 2023.

19. On January 23, 2023, French Brown responded to Plaintiff's email and stated that his time off for physical therapy "should be easily manageable" and asked that Plaintiff let her know if he needed to consider a leave of absence.

20. On January 24, 2023, Plaintiff informed French Brown that he would need "some type of leave of absence, STD or other" and he would know more as of his February 21, 2023, appointment with his surgeon.

21. On or about February 1, 2023, French Brown informed Plaintiff that he was the subject of a Human Resources investigation based on an employee complaint or complaints (French Brown did not specify). When Plaintiff inquired further about the investigation, French Brown mentioned Juneteenth. Plaintiff asked French Brown if he was being accused of racially inappropriate behavior and she told him that he was not. Rather, French Brown mentioned Plaintiff's "language" but did not provide specifics.

22. On or about February 2, 2023, Plaintiff emailed French Brown and asked for details regarding the investigation. Additionally, Plaintiff voluntarily completed Defendant's Code of Ethics training and informed French Brown of the

same.  Plaintiff apologized for anything that he did that was unprofessional and asked what he could do to correct any wrongs and make it up to his team.

23. Later that day, French Brown responded to Plaintiff's email and stated: "I sincerely appreciate you taking the time to send this message.  I will work to create a recommendation that allows you to address your team and the situation in its entirety.  I look forward to partnering with you on this recommendation."  After receiving this email from French Brown, Plaintiff never heard from French Brown again regarding the investigation until he was terminated.

24. On February 21, 2023, Plaintiff emailed French Brown (and copied Sanchez) and informed her that he would most likely be applying for an extended leave that day or the next pending his surgeon's recommendation.  Plaintiff further informed French Brown that he was expecting to receive a date for his surgery during his appointment that day.  Additionally, Plaintiff requested that French Brown "forward documentation that is required of me."

25. French Brown responded and looped in Regina Fernanders (Senior Benefits Analyst) "to provide further details and items regarding your need for FMLA."  Prior to this email, no one from Defendant offered Plaintiff leave under the FMLA for his serious health condition.

26. On February 23, 2023, Plaintiff was terminated from his employment with Defendant. During the virtual meeting, Sanchez was short with Plaintiff and simply told Plaintiff that, due to a Human Resources investigation, Defendant chose to terminate Plaintiff's employment based on a violation of the Business Code of Ethics. Sanchez mentioned an "incident" on December 17, 2022, but would not provide further details.

27. On February 23, 2023, Plaintiff was also provided a termination letter by French Brown. The letter states that, on December 19, 2022, Defendant's Human Resources was made aware of a concern into Plaintiff's conduct. After an investigation, Defendant asserted that "it has been found that you have violated FirstKey Homes Code of Business Ethics and Non-Retaliation Policy. Plaintiff was never interviewed as part of the investigation and was never informed as to what he did that was a terminable offense.

28. In 45 years of working, this was the first time Plaintiff was ever terminated from a job.

29. Two weeks after Plaintiff's termination, Plaintiff was set to receive a bonus of approximately $50,000. In fact, Defendant deposited the bonus in Plaintiff's bank account and promptly withdrew the deposit.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

30. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through twenty-nine (29).

31. Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq*.

32. Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding his eligible FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

33. Defendant is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

34. Plaintiff suffered from a serious health condition within the meaning of the FMLA.

35. Defendant's actions interfered with Plaintiff's lawful exercise of his FMLA rights. Specifically, Defendant failed to offer Plaintiff leave under the FMLA (block and/or intermittent) for which Plaintiff was qualified. Moreover, Defendant failed to provide Plaintiff with leave under the FMLA and therefore

interfered with Plaintiff's rights under the FMLA when it terminated Plaintiff's employment.

36. Defendant's actions constitute violations of the FMLA.

37. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Liquidated damages;

    e. Attorneys' fees and costs;

    f. Injunctive relief; and

    g. For any other relief this Court deems just and equitable.

## COUNT II
## FAMILY AND MEDICAL LEAVE ACT -- RETALIATION

38. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through twenty-nine (29).

39. Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's request for FMLA leave was a substantial or motivating factor that prompted Defendant to take adverse employment actions against Plaintiff, including:

    (a) terminating Plaintiff's employment; and

    (b)    refusing to compensate Plaintiff for his earned bonus;

40.    Defendant's actions constitute violations of the FMLA.

41.    As a result of Defendant's actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Liquidated damages;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    g.    For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

42.    Plaintiff, GILMAN SCHULZ, III, demands a trial by jury on all issues so triable.

**DATED** this 30th day of March 2023.

        **FLORIN GRAY BOUZAS OWENS, LLC**

        *Gregory A. Owens*_____
        **GREGORY A. OWENS, ESQUIRE**

Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*